EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pablo Meléndez Rivera<br><br>Peticionario<br><br>v.<br><br>Corporación del Fondo del Seguro del Estado<br><br>Recurrida | Certiorari<br><br>2016 TSPR 64<br><br>195 DPR \_\_\_\_ |

Número del Caso: CC-2014-633

Fecha: 7 de abril de 2016

Tribunal de Apelaciones:

      Región Judicial de Carolina, Fajardo – Panel IX

Abogados de la Parte Peticionaria:

    Lcdo. Carlos Marín Vargas
    Lcdo. Iván J. Igartúa Veray

Abogados de la Parte Recurrida:

    Lcdo. Juan Casillas Ayala
    Lcdo. Luis F. Llach Zúñiga
    Lcda. Lorimar Barreto Vincenty

Materia: Derecho procesal laboral: Cuándo comienza el término prescriptivo para instar una acción por discrimen ante los tribunales si se solicitó reconsideración de la determinación inicial de la Unidad Antidiscrimen del Departamento de Trabajo y Recursos Humanos. Ley Núm. 100 de 30 de junio de 1959, 29 LPRA sec. 150.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pablo Meléndez Rivera

    Peticionario

       v.

                      CC-2014-633     *Certiorari*

Corporación del Fondo
del Seguro del Estado

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 7 de abril de 2016.

Nos corresponde determinar cuándo comienza a transcurrir el término prescriptivo para acudir al foro judicial tras haberse interpuesto una solicitud de reconsideración en torno a la determinación de la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos sobre una causa de acción de discrimen laboral.

I

En el 2007 el Sr. Pablo Meléndez Rivera acudió a la Unidad Antidiscrimen (Unidad Antidiscrimen) del Departamento del Trabajo y Recursos Humanos (Departamento) para reclamar que la Corporación del Fondo del

Seguro del Estado (CFSE) lo discriminó por razón de edad. Específicamente, sostuvo que el Director de Área de Asuntos Actuariales lo llamó "viejo" y realizó una serie de vejámenes e injusticias despojándolo de funciones y evaluándolo por debajo de sus ejecutorias. Alegó que ese patrón de hostigamiento le afectó en su desempeño, por lo que no fue acreedor de aumentos salariales. A su vez, solicitó que los cargos se atendieran tanto por el *Equal Employment Opportunity Commission* (EEOC) como por el foro local.[1]

Luego de los trámites correspondientes, el 4 de diciembre de 2008 la Unidad Antidiscrimen le notificó al señor Meléndez Rivera una determinación de No Causa Probable de discrimen por edad en el empleo. En ésta, le advirtió de su derecho a solicitar reconsideración ante el Secretario del Departamento del Trabajo y Recursos Humanos (Secretario). Oportunamente, el señor Meléndez Rivera solicitó reconsideración y señaló que la determinación de No Causa Probable no consideró la prueba documental y testifical ofrecida.

El 18 de mayo de 2010 el Secretario declaró ha lugar la solicitud de reconsideración y remitió el caso al proceso correspondiente ante el Negociado de Asuntos Legales (Negociado).

---

[1] La EEOC y la Unidad Antidiscrimen poseen un *Worksharing Agreement* en aras de ofrecer un procedimiento eficiente minimizando la duplicidad de los esfuerzos con el fin de alcanzar la consistencia máxima en las determinaciones relacionadas con casos de discrimen.

A raíz de ello, el 19 de mayo de 2011 el Negociado presentó una *Querella* (Primera *Querella*) ante el Tribunal de Primera Instancia reclamando que hubo actuaciones discriminatorias contra el señor Meléndez Rivera que provocaron que no fuera acreedor de un aumento salarial, así como daños y angustias mentales. Empero, al no diligenciarse el emplazamiento en el término correspondiente, la Primera *Querella* presentada fue desestimada sin perjuicio mediante Sentencia emitida el 16 de noviembre de 2011, archivada en autos el 5 de diciembre de 2011.

Subsiguientemente, el 20 de abril de 2012 el Negociado acudió ante el foro primario mediante *Querella* (Segunda *Querella*) contra la CFSE alegando discrimen por razón de edad. Por su parte, la CFSE negó haber discriminado y solicitó la desestimación de la Segunda *Querella*.

En lo pertinente, la CFSE alegó que los reclamos estaban prescritos. Adujo que los procesos de reconsideración de la determinación tomada por la Unidad Antidiscrimen no suspenden o congelan los términos para presentar una reclamación por discrimen. Por ello, sostuvo que los términos para ejercer cualquier reclamación comenzaron a transcurrir desde la determinación original de No Causa Probable de la Unidad Antidiscrimen emitida el 4 de diciembre de 2008. De otra parte, el señor Meléndez Rivera se opuso a la solicitud de desestimación al señalar

que su acción no estaba prescrita, debido a que el término se mantuvo en suspenso mientras el Secretario atendió la solicitud de reconsideración y fue interrumpido posteriormente con la presentación de la Primera *Querella* instada el 19 de mayo de 2011. Así las cosas, la CFSE insistió que la causa estaba prescrita porque, aún bajo ese supuesto, la Primera *Querella* fue presentada un día tarde.

Analizadas las posturas de las partes, el 13 de noviembre de 2013 el Tribunal de Primera Instancia declaró no ha lugar la solicitud de desestimación presentada por la CFSE. Inconforme, la CFSE acudió ante el Tribunal de Apelaciones alegando que erró el Tribunal de Primera Instancia al no desestimar la Segunda *Querella* presentada por el señor Meléndez Rivera.

El Tribunal de Apelaciones emitió Sentencia revocatoria el 25 de junio de 2014. Al así proceder, el foro apelativo intermedio determinó que siendo la Unidad Antidiscrimen la responsable de administrar e investigar querellas, el proceso ante ésta culminó con la notificación del Secretario de su determinación de reconsiderar y remitir al Negociado para los trámites ulteriores. A partir de ese momento, entendió que comenzó a transcurrir el término para presentar la causa de acción por discrimen. Por tanto, el Tribunal de Apelaciones concluyó que la Primera *Querella* fue presentada un día

tarde, por lo que no tuvo el efecto de interrumpir el término para instar la Segunda *Querella.*

En consecuencia, el señor Meléndez Rivera acude ante este Tribunal y señala que erró el foro apelativo intermedio al concluir que el término prescriptivo para instar la causa de acción por discrimen se reinició a partir de que el Secretario acogió la moción de reconsideración. En síntesis, plantea que la determinación del Secretario no finalizó el proceso ante la agencia, ya que éste fue referido al Negociado. De otra parte, la CFSE se opuso a la expedición del recurso presentado por entender que el término prescriptivo comenzó a decursar con la notificación del Secretario, declarando ha lugar la solicitud de reconsideración y refiriendo el asunto al trámite correspondiente.

Mediante la Resolución emitida el 12 de diciembre de 2014, expedimos el recurso ante nuestra consideración. Posteriormente, las partes nos solicitaron acoger como alegatos los escritos ya presentados ante este Tribunal. Así procedimos, por lo que nos corresponde atender en los méritos la controversia ante nuestra consideración.

II

En Puerto Rico, la Constitución prohíbe el discrimen por motivo de raza, color, sexo, nacimiento, origen o condición social, ideas políticas o religiosas. Art. II Sec. 1, Const. de Puerto Rico, 1 LPRA. Por su parte, en el ámbito laboral, la Ley Núm. 100 de 30 de junio de 1959,

según enmendada (Ley Núm. 100), 29 LPRA sec. 146, *et seq.* regula lo concerniente al discrimen por razón de edad en el empleo de tal forma que se ofrezca una protección eficaz a los trabajadores. <u>Suárez Ruiz v. Figueroa Colón</u>, 145 DPR 142, 148 (1998). Específicamente, el Art. 2A de la Ley Núm. 100 impone responsabilidad civil a todo patrono que discrimine contra una persona por razón de edad, raza, color, sexo, origen social o nacional, condición social, afiliación política, ideas políticas o religiosas, entre otras. 29 LPRA sec. 147.

Con el propósito de implantar la política pública para erradicar el discrimen en el empleo, se facultó al Secretario -a iniciativa propia o mediante querella presentada- a realizar aquellas investigaciones e inspecciones que considere convenientes y necesarias. 29 LPRA sec. 150. En este ejercicio, se crea un procedimiento informal en el Departamento ante la Unidad Antidiscrimen, la cual constituye la entidad encargada de investigar los reclamos de los empleados contra los patronos por alegado discrimen. Asimismo, se adoptó el Reglamento Núm. 6236 de 21 de noviembre de 2000, *Reglamento General de la Unidad Antidiscrimen*, (Reglamento). No obstante, la Ley Núm. 100 no impone el requisito de agotar el proceso ante la Unidad Antidiscrimen previo a instar una acción judicial; es decir, el empleado puede optar por acudir directamente al tribunal para vindicar sus derechos. <u>Matos Molero v. Roche Products, Inc.</u>, 132 DPR 470, 476 (1993).

El procedimiento ante la Unidad Antidiscrimen no constituye un procedimiento adjudicativo sino que es un procedimiento investigativo y conciliador dirigido a determinar si procede dar acceso a la reclamación por discrimen ante los tribunales. No se trata de un procedimiento en el cual se adjudica de manera definitiva si hubo o no el alegado discrimen. *Véase* Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. de la C. 1199 de 19 de marzo de 1991, 5ta Sesión Ordinaria, 11ma Asamblea Legislativa, pág. 3; además, Asoc. de Alcaldes v. Contralor, 176 DPR 150 (2009); Maldonado v. Russe, 153 DPR 342, 355 (2001). Tampoco, el Secretario goza de la facultad para adjudicar propiamente los derechos y obligaciones de los empleados y patronos envueltos en casos de supuesto discrimen. Éste, no obstante, posee la autoridad para presentar la demanda en representación de los obreros afectados, a iniciativa propia o a instancia de parte. 29 LPRA sec. 149.

En consecuencia, la Unidad Antidiscrimen se limita a dilucidar la posibilidad de una causa de acción por discrimen. Este proceso comienza con la presentación de una querella instada por cualquier persona que entienda o tenga conocimiento personal sobre actuaciones discriminatorias de un patrono contra uno o varios trabajadores o de uno o varios aspirantes a empleo. Una vez presentada, un representante de la Unidad Antidiscrimen recibe la querella e información básica para

determinar si el Departamento tiene facultad para intervenir y orientar al trabajador, además, la notifica al patrono querellado. Al así actuar, considera que: (1) la controversia sea relacionada al trabajo; (2) el querellado sea patrono a tenor con la Ley Núm. 100; (3) la controversia surja por algún discrimen por raza o color, origen o condición social, religión, sexo, edad, ideas políticas, afiliación política, matrimonio, origen nacional o impedimento físico o mental; (4) la reclamación haya sido presentada dentro del término prescriptivo; y si (5) el perjudicado tiene interés en cooperar con la investigación. Una vez formulada la querella, ésta no podrá ser retirada o desistida por el querellante sin la autorización escrita y previa del Secretario. *Véase* Art. 5 del Reglamento. Empero, éste puede incoar una acción independiente ante los tribunales si así lo notifica a la Unidad Antidiscrimen y el Secretario lo autoriza, en cuyo caso se dan por terminados los procedimientos mediante el cierre administrativo del caso sin perjuicio de la facultad que el Secretario ostenta para intervenir en el pleito. *Véanse* Arts. 5 y 6 del Reglamento.

Durante el proceso de investigación, la Unidad Antidiscrimen realiza un descubrimiento de prueba y promueve la solución alterna y conciliación de los conflictos. Sin embargo, de no llegarse a un acuerdo satisfactorio, la Unidad Antidiscrimen determina si existe la posibilidad de alguna práctica discriminatoria y

notifica por correo a las partes advirtiéndoles de su derecho a instar una acción judicial dentro del término de un año a partir de la notificación. *Véanse* Arts. 8-11 del Reglamento. De razonar que la querella carece de méritos, notifica un *Aviso de Determinación de No Causa Probable de Discrimen*. Bajo cualquiera de estas instancias, las partes tienen derecho a solicitar una reconsideración al Secretario quien tendrá la facultad de modificar, confirmar o revocar en todo o en parte la acción de la Unidad Antidiscrimen. A estos efectos, el Secretario emite la decisión correspondiente y refiere a los procedimientos ulteriores mediante la orden apropiada. *Véase* Art. 12 del Reglamento.

III

En lo atinente al asunto que nos ocupa, debemos repasar los efectos de la prescripción y las expresiones de este Tribunal relacionadas a las acciones al amparo de la Ley Núm. 100. Veamos.

La prescripción es una figura jurídica que regula el tiempo que posee una parte para reclamar y hacer valer un derecho frente a un deudor. Estos términos buscan el balance entre el tiempo que posee una persona para reclamar un derecho y el hecho de que una causa de acción contra otra no tenga vida eterna. *Véanse* Orraca López v. ELA, 192 DPR 31, 48-51 (2014); Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365, 372-373 (2012); Ortiz v. PR Telephone, 162 DPR 715, 733 (2004); Galib Frangie v. El

Vocero de PR, 138 DPR 560, 566 (1995); Colón Prieto v. Géigel, 115 DPR 232, 243 (1984). Los plazos prescriptivos responden a una política firme que persigue solucionar de forma expedita la resolución de las reclamaciones y castigar la inercia en tramitar un reclamo, por lo que la prescripción acarrea, de ordinario, la extinción de un derecho. 31 LPRA sec. 5291.

En su origen, la Ley Núm. 100 no disponía de un término prescriptivo para presentar una acción ante los tribunales por actos de discrimen. No obstante, tal laguna fue suplida por este Tribunal al resolver Olmo v. Young & Rubicam of PR, Inc., 110 DPR 740, 745-748 (1981) donde se determinó que las reclamaciones al amparo de la Ley Núm. 100 tienen un término prescriptivo de un año. Como todo término prescriptivo, éste puede interrumpirse por su ejercicio ante los tribunales,[2] la reclamación extrajudicial del acreedor y por cualquier reconocimiento de deuda de parte del deudor. Art. 1873 del Código Civil, 31 LPRA sec. 5303; veánse, además, SLG Serano Báez v. Foot Locker, 182 DPR 824, 831-834 (2011); Suárez Ruiz v. Figueroa Colón, 145 DPR 142, 150-152 (1998).

Debido a tal realidad, y en ausencia de una disposición estatutaria, este Tribunal en Srio. del

---

[2] Es importante recordar que basta con la presentación de la demanda para que se interrumpa el término prescriptivo. Véanse, Martínez v. Soc. de Gananciales, 145 DPR 93, 103 (1998); Suárez Ruiz v. Figueroa Colón, 145 DPR 142, 151 (1998); Durán Cepeda v. Morales Lebrón, 112 DPR 623, 625 (1982) y casos allí citados; Feliciano v. AAA, 93 DPR 655, 660 (1966).

Trabajo v. F.H. Co., Inc., 116 DPR 823 (1986) analizó que el proceso seguido ante la Unidad Antidiscrimen constituye una reclamación extrajudicial cuyo efecto es el de interrumpir el término prescriptivo de un año. Razonamos que, como la ley faculta al Secretario a presentar querellas en favor de los trabajadores, sus acciones pueden interrumpir el periodo prescriptivo. Advertimos que resolver lo contrario sería adverso a la política pública del Estado para que los trabajadores acudan inicialmente ante el Departamento. Íd., págs. 827-828.

Posterior a nuestras determinaciones, se aprobó la Ley Núm. 10-1991 (Ley Núm. 10) que enmendó la Ley Núm. 100. En particular, se incorporó lo resuelto en Olmo v. Young & Rubicam of PR, Inc., *supra*, a los efectos de que el término prescriptivo para reclamaciones de discrimen es de un año. Asimismo, se integró y elaboró lo establecido por este Tribunal en Srio. del Trabajo v. F.H. Co., Inc., *supra*, por lo que se estableció que se interrumpe el periodo prescriptivo al notificarle la querella al patrono o querellado, siempre que ello se haga dentro del referido término. A tales efectos la Ley Núm. 10 establece como sigue:

> Cuando se presente una querella por discrimen en el Departamento del Trabajo y Recursos Humanos, el término prescriptivo de un año para iniciar la acción judicial quedará interrumpido al notificársele la querella al patrono o querellado, siempre y cuando que la notificación se efectúe dentro de dicho término prescriptivo. **Dicho término prescriptivo quedará, además, en suspenso o congelado mientras la querella se**

**continúe tramitando en el Departamento del Trabajo y Recursos Humanos y no se haya notificado al querellado la determinación del Secretario de dicho Departamento sobre la reclamación.** Si mientras se está tramitando la reclamación en el Departamento del Trabajo y Recursos Humanos, el querellante solicita que se le permita retirar la querella o manifiesta que no desea continuar con dicho trámite, el término prescriptivo antes aludido comenzará nuevamente a partir de la fecha en que el Secretario del Trabajo y Recursos Humanos notifique de su determinación a las partes. En los demás casos, el término prescriptivo se interrumpirá con la reclamación extrajudicial, con la radicación de la acción judicial correspondiente o por el reconocimiento de la deuda por parte del patrono o de su agente autorizado. (Énfasis suplido). 29 LPRA sec. 150.

Tal enmienda a la Ley Núm. 100 evaluó la experiencia en el trámite y disposición de las querellas que se presentan ante la Unidad Antidiscrimen. Asimismo, consideró el hecho de que bajo los estatutos federales y el proceso ante la EEOC y sus agencias delegadas se paralizan los términos para recurrir al tribunal. *Véase* Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. de la C. 1199 de 19 de marzo de 1991, *supra*.

Conforme a tales preocupaciones, el estatuto estableció no tan sólo la interrupción del término prescriptivo, sino su congelación o suspensión mientras se continúe tramitando la querella ante la Unidad Antidiscrimen hasta que el Secretario notifique al patrono o querellado su determinación. Ello, con el fin de proteger al máximo la causa de acción de los querellantes que acuden ante ese organismo y evitar que en el trámite

judicial posterior se invocara la prescripción como defensa. *Véanse*, Informe de la Comisión de Trabajo, Asuntos del Veterano y Recursos Humanos del Senado de 9 de abril de 1991 en el P. del S. 978, 5ta Sesión Ordinaria, 11ma Asamblea Legislativa, págs. 2-3; Ponencia del Departamento del Trabajo y Recursos Humanos de 27 de febrero de 1991 con relación al P. del S. 978.

El cambio incorporado por la Ley Núm. 10 es uno significativo. Como es sabido, la interrupción del término prescriptivo puede ser de dos tipos. La doctrina distingue entre una interrupción de carácter instantáneo, lo que llamamos *interrupción* y una paralización de efectos más duraderos, a lo que nos referimos como *congelación*. En aquellas suspensiones que constituyen una *interrupción* del término prescriptivo se comienza a computar nuevamente desde el mismo momento en que fue paralizado. En aquellas instancias en las que estamos ante una *congelación*, el periodo prescriptivo comienza a transcurrir hasta un momento posterior. L. Díez-Piccazo, La Prescripción en el Código Civil, Barcelona, Ed. Bosch, 1964, pág. 138; *véanse* Maldonado v. Russe, 153 DPR 342, 354 nota al calce 5 (2001); Suárez Ruiz v. Figueroa Colón, 145 DPR 142, 150-151 (1998). La Ley Núm. 10 no tan sólo incorporó la norma jurídica establecida en Srio. del Trabajo v. F.H. Co., Inc., *supra*, sino que expresamente concedió una garantía mayor cuando dispuso la congelación del término prescriptivo hasta que se culmine el trámite y se

notifique la determinación del Secretario. 29 LPRA sec. 150.

Posterior a ello, este Tribunal aplicó la norma legislada en Suárez v. The Bankers Club of P.R., Inc., 143 DPR 58 (1997) (*Per Curiam*). En ese entonces, expresamos que el término prescriptivo queda suspendido por el interés en la protección de los obreros y la preservación de la paz industrial. En aquella ocasión, aunque no tuvimos la necesidad de adentrarnos en los efectos de la reconsideración como ocurre en el caso ante nos, resolvimos que la acción judicial presentada fue interpuesta a tiempo porque el término prescriptivo quedó congelado por las acciones en la Unidad Antidiscrimen hasta que los querellados fueron notificados de la determinación tomada por el Secretario. Íd., págs. 62-63.

Luego, al resolver Matos Molero v. Roche Products, Inc., *supra*, atendimos lo que sucede cuando se insta una querella ante el EEOC. Allí determinamos que la norma enunciada en Srio. del Trabajo v. F.H. Co., Inc., *supra*, aplica a las querellas presentadas ante la EEOC por la relación existente entre ésta y la Unidad Antidiscrimen. Así, expusimos que el efecto práctico de presentar un cargo ante la EEOC equivale a instarlo ante la Unidad Antidiscrimen. Matos Molero v. Roche Products, Inc., *supra*, págs. 485-487. Además, recalcamos que la política pública, tanto en la esfera federal como en la local, es la de proveer mecanismos administrativos necesarios para

hacer viable la conciliación y resolución extrajudicial de los problemas laborales. Apuntamos que se debe considerar el hecho de que desde la presentación de la querella el patrono está consciente y preparado para una posible acción judicial **una vez finalicen los trámites**, por lo que la espera no lo perjudica. Íd., pág. 488. Como consecuencia, concluimos que el término prescriptivo de un año para presentar una demanda al amparo de la Ley Núm. 100, *supra*, "queda suspendido durante el procesamiento del cargo". Íd. En otras palabras, el término prescriptivo queda congelado o suspendido hasta que la Unidad Antidiscrimen culmine con la investigación, pues ni ésta ni el Secretario del Departamento gozan de facultad para conceder algún remedio.

Tal norma fue reiterada en Suárez Ruiz v. Figueroa Colón, *supra*, págs. 151-152, en donde expresamos que el término comienza nuevamente a computarse al darse por terminados los procedimientos ante la Unidad Antidiscrimen. Recientemente, en SLG Serrano-Báez v. Foot Locker, *supra*, recalcamos que "ese término prescriptivo estará suspendido, mientras la querella continúe su trámite en la Unidad Antidiscrimen y no se haya notificado la determinación del Secretario del Departamento del Trabajo y Recursos Humanos, sobre la reclamación". Íd., pág. 833.

A la luz de la jurisprudencia antes citada, debe quedar palmariamente establecido que el término

prescriptivo de un año para entablar una reclamación judicial por discrimen laboral se suspende o congela con la presentación de una querella ante la Unidad Antidiscrimen notificada al patrono dentro del referido término. El efecto que acarrea la referida *congelación* es que no comienza a transcurrir el término para acudir al foro judicial hasta un periodo posterior. Claro está, lo expuesto no puede acarrear la *congelación* o suspensión del término prescriptivo al infinito. Como establecimos, la *congelación* de un término prescriptivo presupone que éste comenzará a correr en un momento posterior. Ante ello, la Ley Núm. 10 fijó expresamente el momento de partida para el reinicio del periodo prescriptivo para instar la acción judicial al disponer que estará supeditado a que el Secretario notifique su decisión. 29 LPRA sec. 150. En aquellas instancias en que existe una determinación de Causa Probable, se culmina el proceso ante la Unidad Antidiscrimen con la notificación que hace el Secretario.

IV

A pesar de ello, la controversia de autos suscita la interrogante de si la norma expuesta se limitó a la determinación original de causa o no causa probable que emite la Unidad Antidiscrimen y no a aquellas instancias en las que se solicita al Secretario una reconsideración de esa determinación original. En consecuencia, las partes están discordes en cuanto al efecto que ello conlleva

sobre el término prescriptivo para entablar la correspondiente acción judicial.

Por un lado, el señor Meléndez Rivera expone que el término prescriptivo se mantiene en suspenso o congelado por el referido del Secretario al Negociado de Asuntos Legales hasta que éste inste la acción judicial. Por su parte, la CFSE interpreta que el término comenzó desde la determinación original de no causa emitida por la Unidad Antidiscrimen, y en la alternativa, desde que se emitió la determinación del Secretario declarando con lugar la solicitud de reconsideración presentada por el señor Meléndez Rivera. Analicemos.

Al examinar los fundamentos que promulgaron la aprobación de la Ley Núm. 10, resalta el objetivo de proteger al máximo a las personas que son víctimas de actos de discrimen en el entorno laboral y la aspiración de atajar este tipo de situación de una forma conciliadora. De igual forma, se contempló la importancia de que el patrono querellado advenga en conocimiento de que se ha interpuesto una reclamación en la Unidad Antidiscrimen en su contra por alegado discrimen dentro del término prescriptivo para ello y la necesidad de que las últimas gestiones realizadas en la Unidad Antidiscrimen sean notificadas al patrono. Ello, pues de esta manera se consideran "los intereses de ese trabajador que alega ha sido discriminado sino también a aquellos patronos que puedan ser víctimas de querellas y

reclamaciones frívolas e infundadas". *Véase* Ponencia de la Asociación de Industriales de 5 de marzo de 1991 con relación al P. del S. 978, pág. 2. Esto, con el propósito de limitar el tiempo en el cual el patrono está sujeto a reclamaciones de discrimen y minimizar la incertidumbre que ello acarrea. Íd.

De lo discutido surge de forma diáfana que la Ley Núm. 10 dispone que el término prescriptivo de un año queda congelado mientras se continúen los trámites ante la Unidad Antidiscrimen y no se notifique la determinación del Secretario.[3] 29 LPRA sec. 150. Como expusimos, el proceso ante la Unidad Antidiscrimen reconoce a las partes su derecho a solicitar una oportuna moción de reconsideración ante el Secretario e incluso le concede a éste la prerrogativa de ordenar *motu proprio* la revisión de esa determinación. De así proceder, el Secretario emite la correspondiente decisión y refiere para los procedimientos ulteriores. Art. 12 del Reglamento.

Ciertamente, durante la dilucidación de la reconsideración oportunamente presentada, los procesos ante la Unidad Antidiscrimen no han culminado como tampoco el Secretario ha notificado su decisión. El proceso termina cuando el Secretario determina si confirma,

---

[3] Nótese que en las instancias en las que la persona agraviada solicite retirar la querella o manifieste que no desea continuar con el trámite, la Ley Núm. 10 dispone que el término prescriptivo aludido comenzará nuevamente a partir de la fecha en que el Secretario notifique "de su determinación a las partes". 29 LPRA sec. 150.

modifica o revoca la determinación original de la Unidad Antidiscrimen. Por tanto, el periodo prescriptivo se mantiene suspendido o congelado de igual forma cuando existe una reconsideración pendiente hasta tanto el Secretario no la atienda y notifique su decisión en virtud de lo dispuesto por la Ley Núm. 10. Ello, pues no es hasta ese momento que culminan los procedimientos ante la Unidad Antidiscrimen.

La norma antes expuesta custodia y salvaguarda al máximo la política pública en cuanto a erradicar el discrimen al permitir a un agraviado incoar y reparar mediante acción judicial tal vejamen. Asimismo, en nada afecta al patrono, quien desde la radicación de la querella conoce de la suspensión del término prescriptivo para acudir al tribunal por razón del proceso investigativo oportunamente presentado.

Como resultado, el término prescriptivo de una acción de discrimen laboral queda suspendido o congelado cuando se presenta oportunamente una querella en la Unidad Antidiscrimen del Departamento hasta que se notifique la determinación del Secretario en cuanto a la reconsideración que le fuera presentada conforme al Reglamento. A partir de ese momento comienza a transcurrir el término prescriptivo de un año para instar el reclamo por el alegado discrimen.

V

Con el referido marco jurídico, nos corresponde dilucidar si procedía la desestimación de la Segunda *Querella* presentada. Para ello, debemos recordar que procede aplicar rigurosamente el principio de que el examen de una solicitud de desestimación debe ser uno liberal a favor de la parte que reclama un derecho al tribunal. Como corolario, se consideran como ciertas las alegaciones presentadas en la demanda, para la cual sólo se requiere una relación sucinta y sencilla del derecho que se reclama. Accurate Solutions & Design, Inc. v. Heritage Enviromental Services Puerto Rico, LLC, res. 30 de junio de 2015, 2015 TSPR 90, 193 DPR ___ (2015); Sánchez v. Aut. de los Puertos, 153 DPR 559, 569-570 (2001). Máxime cuando estamos ante una solicitud de desestimación de una acción fundada en un estatuto remedial a favor de la clase trabajadora que pretende castigar una conducta discriminatoria.

De los hechos ante nuestra consideración surge diáfanamente que no existe controversia alguna que la querella presentada en la Unidad Antidiscrimen paralizó el término para instar una acción judicial por discrimen laboral. Así las cosas, el referido término comenzó a transcurrir desde que se notificó la determinación del Secretario de declarar ha lugar la solicitud de reconsideración presentada por el señor Meléndez Rivera y referir el asunto al Negociado para presentar la acción

judicial correspondiente. A partir de esa notificación el señor Meléndez Rivera tenía un año para acudir al foro judicial.

Del expediente se desprende que la determinación del Secretario en cuanto a la solicitud de reconsideración fue emitida el **18 de mayo de 2010.** Asimismo, resalta que el Negociado presentó su Primera *Querella* en el Tribunal de Primera Instancia el **19 de mayo de 2011,** la cual fue desestimada por falta de emplazamiento. Sin lugar a dudas, el señor Meléndez Rivera tenía un año para instar su reclamo ante el Tribunal a partir del 18 de mayo de 2010. Habiéndose presentado la Primera *Querella* el **19 de mayo de 2011** ésta definitivamente fue presentada transcurrido por un día el periodo prescriptivo para entablar el reclamo por discrimen. Consiguientemente, la Primera *Querella* no interrumpió el término prescriptivo por un año, por lo que la Segunda *Querella* presentada el 20 de abril de 2012 definitivamente está prescrita.[4]

A tenor con ello, procedía la desestimación de la Segunda *Querella* presentada por ser un hecho cierto que la Primera *Querella* fue tardíamente presentada y no interrumpió el término prescriptivo.

---

[4]*Quaere* si el Departamento actuó negligentemente al instar la acción transcurrido el término prescriptivo de un año.

VI

Por los fundamentos esgrimidos, procede confirmar al Tribunal de Apelaciones.


Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pablo Meléndez Rivera

    Peticionario

       v.

                    CC-2014-633    *Certiorari*

Corporación del Fondo
del Seguro del Estado

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 7 de abril de 2016.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirma al Tribunal de Apelaciones.

    Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Feliberti Cintrón concurre con el resultado sin opinión escrita.

                    Juan Ernesto Dávila Rivera
                  Secretario del Tribunal Supremo